**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ANNETTE CORBETT MARTIN,
an individual,

        Plaintiff,                        Case No.:  3:26-cv-1547

v.

REGIONAL ACCEPTANCE
 CORPORATION,
a foreign for-profit corporation,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation,
and TRANS UNION LLC,
a foreign limited liability company,

        Defendants.
_____/

### PLAINTIFF'S NOTICE OF LEAD COUNSEL DESIGNATION

Pursuant to Middle District of Florida Local Rule 2.02(a), Plaintiff hereby designates Max Story of Story Law Group as lead counsel for Plaintiff in this action.

### COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, ANNETTE CORBETT MARTIN (hereinafter, "Plaintiff"), by and through undersigned counsel, and sues Defendants REGIONAL ACCEPTANCE CORPORATION (hereinafter, "Regional Acceptance"), EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"), and TRANS UNION LLC (hereinafter, "Trans Union"), and in support thereof, Plaintiff states:

### PRELIMINARY STATEMENT

1. This is an action brought by Plaintiff, an individual consumer, for damages arising from Defendants' violations of the Fair Credit Reporting Act, 15

U.S.C. § 1681 et seq. (hereinafter, the "FCRA"). Experian and Trans Union failed to follow reasonable procedures to assure maximum possible accuracy of the information in Plaintiff's consumer credit files and failed to conduct reasonable reinvestigations of Plaintiff's repeated disputes. Regional Acceptance failed to conduct reasonable investigations after receiving notice of Plaintiff's disputes from the consumer reporting agencies and repeatedly verified false information. All of these violations concern a single vehicle loan account that was discharged in Plaintiff's Chapter 7 bankruptcy case.

2. Following entry of Plaintiff's Order of Discharge on May 5, 2025, Regional Acceptance continued to furnish, and Experian and Trans Union continued to publish, the discharged account as an active, delinquent, personal obligation of Plaintiff, with a five-figure balance, growing past-due amounts, and, on Trans Union, an affirmatively false remark stating that Plaintiff had reaffirmed the debt. Regional Acceptance simultaneously reported the same account correctly to Equifax as included in bankruptcy with no balance owed, demonstrating that it knew the account's true status at all times. Trans Union verified the false information as accurate in August 2025 and did not delete the account until April 7, 2026, roughly eleven months after the discharge. Experian verified the false information repeatedly and continues to publish it today: as of June 12, 2026, Experian reports the account as charged off with a balance of $24,113 and the entire $24,113 past due. This continued notwithstanding that on April 15, 2026 Regional Acceptance admitted in writing to the Consumer Financial Protection Bureau that the reporting required correction and represented that a correction had been submitted to the credit bureaus.

## JURISDICTION, VENUE, AND PARTIES

3. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to the FCRA, 15 U.S.C. § 1681 et seq.

4. Defendants are subject to the jurisdiction of this Court as Defendants regularly transact business in this District.

5. Venue is proper in the Middle District of Florida, Jacksonville Division, as the acts and transactions described herein originated and occurred in this District, Plaintiff resides in Duval County, Florida, Plaintiff filed her bankruptcy case in this District, and Plaintiff received her discharge order in this District.

6. At all material times herein, Plaintiff ANNETTE CORBETT MARTIN is a natural person residing in Duval County, Florida, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

7. At all material times herein, Defendant REGIONAL ACCEPTANCE CORPORATION is a for-profit corporation organized under the laws of the State of North Carolina, with its principal place of business at 1424 E Fire Tower Road, Greenville, North Carolina 27858, and is an affiliate of Truist Financial Corporation. Regional Acceptance is a "person" who furnishes information to consumer reporting agencies as provided in the FCRA and as defined by 15 U.S.C. § 1681s-2, and at all material times herein furnished information to Experian, Trans Union, and Equifax Information Services, LLC regarding the Account described below.

8. At all material times herein, Defendant EXPERIAN INFORMATION SOLUTIONS, INC. is a for-profit corporation organized under the laws of the State of Ohio and is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f), regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the

purpose of furnishing consumer reports to third parties for monetary compensation.

9. At all material times herein, Defendant TRANS UNION LLC is a limited liability company with its principal place of business in Chicago, Illinois, and is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f), regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties for monetary compensation.

10. At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

11. All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

### Plaintiff's Bankruptcy Case and Order of Discharge

12. On or about January 27, 2025, Plaintiff filed a voluntary Chapter 7 bankruptcy case in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, identified by Case No. 3:25-bk-00248-JAF (hereinafter, "Bankruptcy Case").

13. Plaintiff listed the Regional Acceptance vehicle loan account described below (the "Account") among the debts in her Bankruptcy Case.

14. On or about February 4, 2025, Plaintiff signed a reaffirmation agreement with Regional Acceptance regarding the Account (the "Reaffirmation Agreement"), which was filed in the Bankruptcy Case on or about February 14, 2025. Regional Acceptance appeared and actively participated in the

Bankruptcy Case, including by withdrawing its proof of claim on or about February 14, 2025.

15. On or about April 22, 2025, prior to entry of any discharge and within the rescission period provided by 11 U.S.C. § 524(c)(4), Plaintiff filed a notice of rescission of the Reaffirmation Agreement in the Bankruptcy Case. The rescission was timely and effective.

16. Upon Plaintiff's timely rescission, the Reaffirmation Agreement was void and of no effect, and Plaintiff's personal liability on the Account remained subject to discharge along with her other qualifying debts.

17. On or about May 5, 2025, the United States Bankruptcy Court entered an Order of Discharge (hereinafter, "Discharge Order") in Plaintiff's Bankruptcy Case.

18. As of May 5, 2025, Plaintiff's personal liability on the Account, including any balance, past-due amount, or deficiency, was discharged, and Plaintiff did not personally owe any amount on the Account.

19. On or about May 7, 2025, the Bankruptcy Noticing Center served notice of the Discharge Order electronically on creditors and parties in interest in the Bankruptcy Case, including Regional Acceptance, Experian, and Trans Union.

20. Following the discharge, Plaintiff surrendered the vehicle securing the Account to Regional Acceptance. The surrender of the collateral did not and could not revive Plaintiff's discharged personal liability on the Account.

### The Account and Regional Acceptance's Furnishing

21. The Account is a vehicle loan originated on or about October 29, 2020 to finance a 2021 Kia Forte, with an original balance of $31,626, a monthly

payment of approximately $686, and an 86-month term. The Account is a joint account of Plaintiff and her husband, Prince Martin. The Account was originally numbered ending in 4462; Regional Acceptance has since renumbered the Account to an account number ending in 9286; and Experian and Trans Union report the Account under an account identification beginning 56137.

22. At all material times herein, Regional Acceptance furnished information regarding the Account to Experian, Trans Union, and Equifax Information Services, LLC.

23. To Equifax, Regional Acceptance reported the Account as "Account Included In Bankruptcy," with no balance and no past-due amount. That reporting was correct. Equifax published the Account in that correct status throughout the relevant period and is not a defendant in this action.

24. To Experian and Trans Union, by contrast, Regional Acceptance continued after entry of the Discharge Order to furnish the Account as an active, delinquent, derogatory personal obligation of Plaintiff, with a five-figure balance, growing past-due amounts, and escalating delinquency codes, and, on Trans Union, with a remark stating "CH 7 REAFFIRMATION OF DEBT," which was affirmatively false because the Reaffirmation Agreement had been timely rescinded of record in the Bankruptcy Case.

25. Reporting a discharged debt as an active, delinquent, charged-off personal obligation of the consumer is materially misleading: it falsely portrays the consumer as presently liable for, and presently delinquent on, a debt that a federal court has discharged.

**Trans Union's Reporting and Plaintiff's Trans Union Disputes**

26. More than sixty days after entry of the Discharge Order, and notwithstanding the Bankruptcy Noticing Center's electronic notice of the discharge, Trans Union continued to publish the Account as an active, delinquent personal debt of Plaintiff.

27. As of August 2025, Trans Union was publishing the Account with: a balance of $28,870; a past-due amount of $2,781; a pay status of "Voluntary Surrender"; the affirmatively false remark "CH 7 REAFFIRMATION OF DEBT"; and delinquency codes of 30, 60, and 90 days for March, April, and May 2025, months during and immediately surrounding the pendency of Plaintiff's Bankruptcy Case.

28. On or about August 14, 2025, Plaintiff disputed the Account with Trans Union, advising Trans Union that the Account had been discharged through her Bankruptcy Case and requesting correction.

29. Trans Union received Plaintiff's dispute and forwarded notice of the dispute to Regional Acceptance through the automated consumer dispute verification ("ACDV") process, thereby triggering Regional Acceptance's obligations under 15 U.S.C. § 1681s-2(b).

30. On or about August 23, 2025, Trans Union issued investigation results to Plaintiff verifying the Account as accurate. The verification retained the $28,870 balance, the $2,781 past-due amount, the "Voluntary Surrender" pay status, and the false "CH 7 REAFFIRMATION OF DEBT" remark.

31. Plaintiff thereafter sent written disputes regarding the Account to Trans Union by certified mail on or about August 22, 2025; October 31, 2025; January 5, 2026; and March 27, 2026. Each dispute was delivered to Trans Union, and on each occasion Trans Union forwarded notice to Regional Acceptance and Regional Acceptance verified the inaccurate information.

32. On or about April 7, 2026, approximately eight months after Plaintiff's August 2025 dispute and approximately eleven months after entry of the Discharge Order, Trans Union deleted the Account from Plaintiff's Trans Union credit file.

33. Trans Union's eventual deletion of the Account confirms that the disputed information could not be verified as accurate. For the preceding eleven months, however, Trans Union published, republished, and affirmatively verified that same information to Plaintiff and to users of her consumer report.

### Experian's Reporting and Plaintiff's Experian Disputes

34. More than sixty days after entry of the Discharge Order, and notwithstanding the Bankruptcy Noticing Center's electronic notice of the discharge, Experian likewise continued to publish the Account as an active, delinquent personal debt of Plaintiff.

35. On or about July 2025, Plaintiff disputed the Account with Experian. Experian's dispute results, generated on or about July 23, 2025, marked the Account "Updated," but the "update" retained a balance of $28,870, a past-due amount of $2,781, a status of "Voluntarily surrendered," and delinquency codes of 30, 60, and 90 days for months during and after the Bankruptcy Case, including a 90-day past-due notation for June 2025, after entry of the Discharge Order.

36. On or about August 14, 2025, Plaintiff again disputed the Account with Experian. Experian forwarded notice of the dispute to Regional Acceptance through the ACDV process, Regional Acceptance verified the inaccurate information, and Experian retained it. Experian thereafter published the Account with a balance of approximately $24,282 and a past-due amount

of $3,882, a past-due figure that had grown since the prior reporting period notwithstanding the discharge.

37. Plaintiff thereafter sent written disputes regarding the Account to Experian by certified mail on or about August 22, 2025; October 31, 2025; January 5, 2026; and March 27, 2026, the last of which was delivered to Experian on March 31, 2026. Each dispute was delivered to Experian, and on each occasion Experian forwarded notice to Regional Acceptance and Regional Acceptance verified the inaccurate information.

38. At all material times, Experian's own file on Plaintiff contained the public record of Plaintiff's Bankruptcy Case, which Experian itself published with the status "Chapter 7 bankruptcy discharged" under identification number 2500248JAF, together with dozens of Plaintiff's other tradelines that Experian correctly reported as "Discharged through Bankruptcy Chapter 7."

39. On or about June 2, 2026, Experian issued dispute results to Plaintiff stating that the Account "Remains," that "[t]he company that reported the information has certified to Experian that the information is accurate," and that the item "was not changed as a result of our processing of your dispute."

40. On or about June 12, 2026, Experian issued further dispute results confirming that the Account "remained unchanged from our processing of your dispute in Jun 2026," and publishing the Account with a status of "Account charged off. $22,032 written off. $24,113 past due as of May 2026," and a recent balance of $24,113 as of May 31, 2026.

41. As of the filing of this Complaint, Experian continues to publish the Account as a charged-off, delinquent personal obligation of Plaintiff in the

amount of $24,113, more than thirteen months after entry of the Discharge Order.

**Plaintiff's CFPB Complaint and Regional Acceptance's Written Admission**

42. On or about March 23, 2026, Plaintiff filed a complaint with the Consumer Financial Protection Bureau ("CFPB") regarding Regional Acceptance's continued reporting of the Account, identified by CFPB Reference No. 260323-30345586.

43. On or about April 15, 2026, Regional Acceptance, through Magdalena Wojtowicz, its Senior Vice President and Process Management Lead, responded to Plaintiff's CFPB complaint in writing. In its response, Regional Acceptance acknowledged Plaintiff's Chapter 7 bankruptcy and discharge, acknowledged that Plaintiff's "auto loan was included in the bankruptcy," and stated: "we have submitted a correction to the credit bureaus to ensure your account is accurately reflected as discharged under your Chapter 7 bankruptcy."

44. No such correction was reflected on Plaintiff's Experian credit report. To the contrary, in the month following Regional Acceptance's written admission, the Account was newly reported as charged off, with a notation "Charge Off as of May 2026" and with the entire $24,113 balance reported as past due; and in June 2026, Regional Acceptance again certified the Account to Experian as accurate in response to Plaintiff's dispute.

45. Regional Acceptance's April 15, 2026 letter establishes that, no later than that date, Regional Acceptance knew that its furnishing of the Account was inaccurate and required correction. Its subsequent verification of the same information as accurate, together with the appearance of a new charge-off notation with a full-balance past-due amount in the month after its written

admission, was knowing, willful, or at a minimum in reckless disregard of its obligations under the FCRA.

### Damages

46. As a result of Defendants' reporting of the Account, Plaintiff dealt with the stress and anxiety of feeling hopeless, believing that she would be denied credit as a result of the erroneous and incorrect reporting of the Account, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

47. Throughout the period of Defendants' violations, Plaintiff was actively working to rebuild her credit following her Bankruptcy Case, and her consumer reports were accessed by numerous prospective creditors. The false charged-off balance of as much as $28,870, and never less than $24,113, materially overstated Plaintiff's debt load and falsely portrayed her as presently delinquent to every user of her consumer reports.

48. Overall, Plaintiff suffered damage to her credit reputation as a result of Defendants' conduct, Defendants defamed Plaintiff's creditworthiness as well as Plaintiff's personal character, and Plaintiff did not receive the benefit of the fresh start that the conclusion of her Bankruptcy Case was intended to provide.

49. Plaintiff retained Story Law Group for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

50. Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, embarrassment, and fear.

### COUNT ONE:
### FAIR CREDIT REPORTING ACT

**VIOLATION OF 15 U.S.C. § 1681e(b)**
**(As to Experian Only)**

Plaintiff re-alleges paragraphs one (1) through fifty (50) as if fully restated herein and further states as follows:

51. Experian is subject to, and violated the provisions of, 15 U.S.C. § 1681e(b) by failing to establish, maintain, and follow reasonable procedures to assure maximum possible accuracy of the information in Plaintiff's consumer credit file. After entry of the Discharge Order, Experian published and continues to publish the Account as a charged-off, delinquent personal obligation of Plaintiff with an active balance and past-due amount of $24,113. That information is inaccurate, incomplete, and materially misleading.

52. Experian's failure to follow reasonable procedures is demonstrated by, among other things: (a) Experian's continued publication of the Account as an active delinquent debt more than sixty days after the Bankruptcy Noticing Center served electronic notice of the Discharge Order on Experian, and for more than thirteen months thereafter; (b) the internal inconsistency between Experian's publication of the Account and Experian's simultaneous publication, in the same file, of the Chapter 7 bankruptcy public record as "discharged" and dozens of Plaintiff's other tradelines as "Discharged through Bankruptcy Chapter 7"; (c) Experian's verification of the Account as accurate in June 2026, after the furnisher's own senior officer had acknowledged in writing that the reporting required correction; and (d) the divergence between Experian's reporting and that of Equifax, which reported the Account correctly from the outset, and Trans Union, which deleted the Account.

53. After entry of the Discharge Order, Experian prepared and published Plaintiff's credit information to Plaintiff's current creditors and potential lenders, which included the Account as a charged-off, unpaid, delinquent account with derogatory and negative payment history, while failing to report the Account as included in and discharged through Plaintiff's Bankruptcy Case.

54. Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

55. Experian's violations of 15 U.S.C. § 1681e(b) constitute negligent or willful noncompliance, or both, with the FCRA, and entitle Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs, as enumerated in 15 U.S.C. §§ 1681n and 1681o.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT**
**VIOLATION OF 15 U.S.C. § 1681i**
**(As to Experian Only)**

Plaintiff re-alleges paragraphs one (1) through fifty (50) as if fully restated herein and further states as follows:

56. Experian is subject to, and violated the provisions of, 15 U.S.C. § 1681i(a)(1) by failing to conduct reasonable reinvestigations of each of Plaintiff's disputes to determine whether the disputed information was inaccurate, and by failing to update or delete the inaccurate information in Plaintiff's credit report and credit file following each reinvestigation.

57. Experian is subject to, and violated the provisions of, 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted in connection with Plaintiff's disputes, including the documentation accompanying Plaintiff's certified-mail disputes and the

Chapter 7 bankruptcy public record appearing as "discharged" in Experian's own file on Plaintiff.

58. Experian is subject to, and violated the provisions of, 15 U.S.C. § 1681i(a)(5) by failing to promptly delete or modify information that was the subject of Plaintiff's disputes and that was inaccurate or could not be verified as accurate, particularly in light of the discharge of record and the furnisher's own written admission that the reporting required correction.

59. Experian's reinvestigations of Plaintiff's disputes were not conducted reasonably or in good faith. Experian's reinvestigations consisted of forwarding Plaintiff's disputes to Regional Acceptance through the automated ACDV process and accepting Regional Acceptance's verifications without independently evaluating whether the reported information was consistent with the bankruptcy discharge of record, with Experian's own file, or with Regional Acceptance's April 15, 2026 written acknowledgment that a correction was required.

60. Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

61. Experian's actions in violation of 15 U.S.C. § 1681i constitute negligent or willful noncompliance, or both, with the FCRA, and entitle Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs, as enumerated in 15 U.S.C. §§ 1681n and 1681o.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT**
**VIOLATION OF 15 U.S.C. § 1681e(b)**
**(As to Trans Union Only)**

Plaintiff re-alleges paragraphs one (1) through fifty (50) as if fully restated herein and further states as follows:

62. Trans Union is subject to, and violated the provisions of, 15 U.S.C. § 1681e(b) by failing to establish, maintain, and follow reasonable procedures to assure maximum possible accuracy of the information in Plaintiff's consumer credit file. After entry of the Discharge Order, Trans Union published the Account as an active, delinquent personal obligation of Plaintiff, with a balance of $28,870, a past-due amount of $2,781, escalating delinquency codes, and the affirmatively false remark "CH 7 REAFFIRMATION OF DEBT." Trans Union continued to do so for approximately eleven months.

63. Trans Union's continued publication of the Account as an active delinquent debt more than sixty days after the Bankruptcy Noticing Center served electronic notice of the Discharge Order on Trans Union was, standing alone, a failure to follow reasonable procedures to assure maximum possible accuracy.

64. Trans Union's failure to follow reasonable procedures is further demonstrated by, among other things: (a) Trans Union's publication of a "CH 7 REAFFIRMATION OF DEBT" remark that was affirmatively false and contradicted by the rescission filed of record in the Bankruptcy Case; (b) Trans Union's publication of escalating 30-, 60-, and 90-day delinquency codes for months during and immediately surrounding the pendency of the Bankruptcy Case; and (c) Trans Union's own eventual deletion of the Account, which confirms that the information was not verifiable as accurate at any time.

65. After entry of the Discharge Order, and before its April 7, 2026 deletion of the Account, Trans Union prepared and published Plaintiff's credit information to Plaintiff's current creditors and potential lenders, which included the Account as an unpaid, delinquent account with derogatory

and negative payment history, while failing to report the Account as included in and discharged through Plaintiff's Bankruptcy Case. Trans Union's eventual deletion of the Account does not remedy these completed violations or the harm they caused.

66. Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein, and constitute negligent or willful noncompliance, or both, with the FCRA, entitling Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs, as enumerated in 15 U.S.C. §§ 1681n and 1681o.

**COUNT FOUR:**
**FAIR CREDIT REPORTING ACT**
**VIOLATION OF 15 U.S.C. § 1681i**
**(As to Trans Union Only)**

Plaintiff re-alleges paragraphs one (1) through fifty (50) as if fully restated herein and further states as follows:

67. Trans Union is subject to, and violated the provisions of, 15 U.S.C. § 1681i(a)(1) by failing to conduct reasonable reinvestigations of Plaintiff's August 14, 2025 dispute and each subsequent dispute to determine whether the disputed information was inaccurate. Instead, on or about August 23, 2025, Trans Union verified as accurate information that was false, and that Trans Union itself later deleted.

68. Trans Union is subject to, and violated the provisions of, 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted in connection with Plaintiff's disputes, including the documentation accompanying Plaintiff's certified-mail disputes establishing that the Account had been discharged and that the Reaffirmation Agreement had been rescinded.

69. Trans Union is subject to, and violated the provisions of, 15 U.S.C. § 1681i(a)(5) by failing to promptly delete information that was inaccurate or could not be verified as accurate. Trans Union did not delete the Account until on or about April 7, 2026, approximately eight months after Plaintiff's August 2025 dispute. Trans Union's eventual deletion of the Account establishes that the information could not be verified as accurate and should have been deleted promptly upon Plaintiff's first dispute.

70. Trans Union's reinvestigations of Plaintiff's disputes were not conducted reasonably or in good faith. Trans Union's reinvestigations consisted of forwarding Plaintiff's disputes to Regional Acceptance through the automated ACDV process and accepting Regional Acceptance's verifications without independently evaluating whether the reported information, including the facially false reaffirmation remark, was consistent with the bankruptcy discharge of record.

71. Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

72. Trans Union's actions in violation of 15 U.S.C. § 1681i constitute negligent or willful noncompliance, or both, with the FCRA, and entitle Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs, as enumerated in 15 U.S.C. §§ 1681n and 1681o.

**COUNT FIVE:**
**FAIR CREDIT REPORTING ACT**
**VIOLATION OF 15 U.S.C. § 1681s-2(b)**
**(As to Regional Acceptance Only)**

Plaintiff re-alleges paragraphs one (1) through fifty (50) as if fully restated herein and further states as follows:

73. Regional Acceptance is subject to, and violated the provisions of, 15 U.S.C. § 1681s-2(b) by willfully and/or negligently publishing or furnishing inaccurate tradeline information within Plaintiff's credit reports, failing to fully and properly investigate Plaintiff's disputes upon receiving notice of those disputes from Experian and Trans Union, failing to review all relevant information regarding the same, certifying to Experian and Trans Union that the inaccurate information was accurate, and failing to direct Experian and Trans Union to correct or delete the inaccurate information following its investigations. See Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295 (11th Cir. 2016).

74. Regional Acceptance received notice of Plaintiff's disputes from Experian and Trans Union through the ACDV process on multiple occasions beginning in or about July and August 2025 and continuing through June 2026. On each occasion, notwithstanding that Plaintiff's personal liability on the Account had been discharged, Regional Acceptance verified the inaccurate information as accurate and declined to direct any correction.

75. Any reasonable investigation by Regional Acceptance would have confirmed that the Account was discharged. Regional Acceptance's own records included the Reaffirmation Agreement, Plaintiff's notice of rescission filed of record in the Bankruptcy Case, the Discharge Order served on Regional Acceptance by the Bankruptcy Noticing Center, and Regional Acceptance's own correct furnishing of the Account to Equifax as "Account Included In Bankruptcy" with no balance owed. Regional Acceptance's simultaneous correct reporting to Equifax and false reporting to Experian and Trans Union demonstrates that Regional Acceptance knew the Account's true status at all material times.

76. Regional Acceptance's April 15, 2026 written response to Plaintiff's CFPB complaint, which acknowledged that the Account was included in Plaintiff's bankruptcy discharge and represented that "a correction" had been "submitted to the credit bureaus," establishes that Regional Acceptance knew its prior verifications were false. Despite that written admission, the Account was newly reported as charged off with the entire $24,113 balance past due in May 2026, and Regional Acceptance again certified the Account to Experian as accurate in June 2026.

77. Regional Acceptance's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

78. Regional Acceptance's actions in violation of 15 U.S.C. § 1681s-2(b) constitute negligent or willful noncompliance, or both, with the FCRA, and entitle Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs, as enumerated in 15 U.S.C. §§ 1681n and 1681o.

### PRAYER FOR RELIEF

WHEREFORE, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a. Judgment against Defendants for maximum statutory damages for violations of the FCRA;

b. Actual damages in an amount to be determined at trial;

c. Compensatory damages in an amount to be determined at trial;

d. Punitive damages in an amount to be determined at trial;

e. An award of attorneys' fees and costs; and

f. Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence, whether paper, electronic documents, or data, pertaining to this litigation as required by law, including but not limited to all e-OSCAR and ACDV records concerning Plaintiff or the Account; all Metro 2 data furnished or received concerning the Account; all dispute-processing records, procedures, and audit trails concerning Plaintiff's disputes; all records concerning receipt and processing of bankruptcy notices regarding Plaintiff; and all records concerning Plaintiff's CFPB complaint, Reference No. 260323-30345586, including the April 15, 2026 response thereto and any correction purportedly submitted to any credit bureau. Respectfully submitted,

STORY LAW GROUP

*/s/ Max Story*
Max Story
Florida Bar No.: 527238
328 2nd Avenue North, Suite 100
Jacksonville Beach, FL 32250
Telephone: (904) 372-4109
max@storylawgroup.com
Counsel for Plaintiff